Bates *et al. v.* Sanders *et al.*

(*Nashville*, December Term, 1934.)

Opinion filed February 23, 1935.

██ 

Brown & Bentley, of McMinnville, for appellants.

Turner & Haston, of McMinnville, for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

 The bill in this cause was dismissed by the chancellor upon demurrer on September 18, 1934. The record was filed in this court on November 3, 1934. The assignment of errors was filed on December 11, 1934, and the cause set for hearing on the 14th of December following. On the latter date counsel for defendants filed a written motion to dismiss the appeal because the assignment of errors was not filed ten days before the cause was set for hearing, as provided by the rules of this court. To this motion counsel filed a written reply, in which it is alleged that the delay was by consent of opposing counsel, and two affidavits are exhibited with the reply which support this allegation. Counsel have not seen proper to controvert same, and did not appear at the bar of this court to present their motion. They filed a reply brief to the assignment of errors, and consented

for the cause to be heard and disposed of upon briefs. In these circumstances, we will treat the motion as having been waived. If, however, we should sustain the motion, in view of the short time that elapsed between the filing of the record and the call of the cause, we would feel disposed to entertain a petition to rehear. No delay or injustice has resulted from failure to comply with the rule, and the desire of this court is to have cases decided upon their merits where it is possible to do so.

The facts out of which this controversy arose may be succinctly stated as follows: Emma Deleu inherited the land here involved from her father and died intestate without ever having been married, survived by her mother and her half-brother, George Bates, a son of her mother by a former marriage. The question to be decided is, Did the title to this land vest in the mother or the half-brother upon the death of Emma?

The exact question was determined by this court in Wills of John D. & Joseph Miller, 2 Lea (70 Tenn.), 54. In that case the child, John M. Miller, inherited the land from his mother and died without ever having been married, survived by his father and half-sister, Dora Miller, a child of his father by a former marriage. The court held that the land descended to the half-sister, Dora. The only difference in the two cases is that in the one the inheritance was from the father, while in the other it was from the mother; the principle involved in both being the same. In that case it was also held that the statute covered the whole law of descents, and provided for every case that might arise. It was further held that the statute divided the subject of descents, making provision for three classes of cases, but that all three should be read together since they are *in pari materia*. It is

only necessary to copy the second and .third divisions into this opinion, since the first is not involved, same being subsections 2 and 3 of section 2420 of the Code of 1858, and section 8380 of the Code of 1932, which are as follows:

"(2) If the estate was acquired by the intestate, and he died without issue, his land shall be inherited—

"(a) By his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided amongst them equally. And if any such brother or sister died in the intestate's lifetime, leaving issue, such issue shall represent their deceased parent, and be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to if living.

"(b) In default of brothers and sisters and their issue, the land shall be inherited by the father and mother of the intestate as tenants in common.

"(c) If both parents be dead, in equal moieties by the heirs of the father and mother in equal degree, or representing those in equal degree of relationship to the intestate; but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who are nearest in blood to the intestate, shall take in preference to others more remote.

"(3) Where the land came to the intestate by gift, devise, or descent from a parent, or the ancestor of a parent, and he die without issue—

"(a) If he have brothers or sisters of the paternal line of the half blood, and brothers or sisters of the maternal line also of the half blood, then the land shall be inherited by such brothers and sisters on the part of the

parent from whom the estate came, in the same manner as by brothers and sisters of the whole blood, until the line of such parent is exhausted of the half blood, to the exclusion of the other line.

"(b) If he have no brothers or sisters, then it shall be inherited by the parent, if living, from whom or whose ancestors it came, in preference to the other parent. ·

"(c) If the transmitting parent be dead, the other surviving parent shall take.

"(d) If both parents be dead, then by the heirs of the parent from whom or whose ancestor it came."

The foregoing were taken from the act of 1784 (chapter 22), and were not materially changed by the act of 1841-42 (chapter 171), so far as the question here involved is concerned. *Beaumont* v. *Irwin*, 2 Sneed (34 Tenn.), 291.

In *Nesbit* v. *Bryan*, 1 Swan (31 Tenn.), 468, 471, 472, the act of 1784 is copied into the opinion, and in construing same the court said:

"It is apparent that the Legislature fully understood the import and effect of the unqualified provision contained in the enacting clause—that it placed the half blood on both sides on a footing of perfect equality with each other, and also with the whole blood, irrespective of how the estate had been acquired by the intestate. Hence the exception or qualification which it was thought proper to incorporate into the proviso, the extent of which is only to exclude, or rather to postpone the half blood of the line from which the estate did not descend, until the line of brothers and sisters from which the inheritance descended, is exhausted. There is not only nothing in the proviso which indicates that it was designed to carry the exclusion of the former further than this; but

the conclusion seems almost irresistible, from the words 'until such line is exhausted of the half blood,' that the Legislature meant only the line of brothers and sisters of the blood of the ancestor from whom the estate had descended, and not the whole line of collateral kindred; and that upon such line of brothers and sisters being exhausted, the half blood of the other line should be let into the succession and inheritance of the estate. Such, we think, is the proper construction of the section in question. And from this it results, that not only where the line of brothers and sisters of 'the half blood, on the part of the ancestor from whom the estate descended, is exhausted, that it shall descend to the half blood of the other line, but likewise, where the intestate died without brothers or sisters of the whole or half blood, on the side of the parent from whom the inheritance came, but having brothers or sisters of the half blood of the other line, the latter will inherit such estate.

"It need scarcely be remarked, that if the estate were acquired by purchase, the proviso in question has no application, and the estate will go equally to the half blood of both lines."

 The law as it existed when the foregoing decision was rendered was not changed when incorporated into the Code of 1858. *Wills of John D. & Joseph Miller, supra.* Construing these two provisions together, it very clearly appears that it was the intention of the Legislature to preserve equality between brothers and sisters of the whole and half blood, except when the land of an intestate came from a parent, in which event the half brothers and sisters of the line from which the land came were to be preferred to those of the other line until such line was exhausted, when the land would descend to those

of the other line. It is only where there are no brothers or sisters of either line that the parent takes. The confusion as to the interpretation of these divisions of the statute is probably due to what we construe to be an inadvertent statement in the opinion in *Wills of John D. & Joseph Miller, supra,* as follows: "So, the third subdivision only provides, in the case specified, that the brothers and sisters of the whole blood, and the parent, or his heirs, from whom or whose ancestors the land came, shall be preferred." The court must have intended to say "brothers and sisters of the half blood," since the purpose of the third division was to give preference to the half brothers and sisters of the transmitting line over the half brothers and sisters of the other line. The construction which we have given these divisions of the statute is also supported by the case of *Chaney* v. *Barker,* 3 Baxt. (62 Tenn.), 424.

By the demurrer it was asserted that under the facts stated in the bill, upon the death of Emma Deleu, the land descended to her mother, and the chancellor so held. This was error. For the reasons stated herein, his decree will be reversed, and the cause remanded to be further proceeded with.