Oscar Lewis et al., Appellees,

*v.*

Herschel Wilson et al., Appellants.

(*Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

JOHN T. HOLLOWAY, CLARENCE CUMMINGS, Murfreesboro, for appellants.

EARL BEASLEY, Franklin, JAMES A. NEWMAN, Nashville, for appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This case is properly styled in the office of the Clerk of the Supreme Court, being an equity appeal, although it is improperly styled in the briefs.

There is only one determinative question for decision, as will appear from the following statement.

J. W. Hampton died intestate in Williamson County, Tennessee, in November 1957 seized and possessed in

fee simple of three tracts of land located in said county which he inherited from his father, William Hampton. Said J. W. Hampton was the only child of said William Hampton and was never married and left no issue. On the paternal side, he was survived by the children and grandchildren of an aunt, Sara Hampton Lewis, only sister of his father, William Hampton, deceased, all of whom are complainants and appellees herein. On the maternal side, he was survived by the two defendants herein, Herschel Wilson and Morris Wilson, children of Len Wilson, deceased, a half-brother on his mother's side. That is, his father and mother, his said aunt, and his said half-brother Len Wilson all predeceased the intestate.

The complainants claim said land as heirs in the line of the ancestor from whom the land descended to J. W. Hampton, deceased, to the exclusion of the two defendants, who are the only children of a deceased half-brother of decedent on his mother's side. Defendants demurred to the bill on the ground that the same shows upon its face that said two defendants are the sole and exclusive owners in fee simple of said real estate. The Chancellor overruled the demurrer and said two defendants have appealed.

The sole question, therefore, is whether under our statute of descent T.C.A. secs. 31-101 and 31-102, these two children of said deceased half-brother on the maternal side represent their deceased parent and take the land to the exclusion of the complainants.

Our statute has not heretofore been construed on this exact set of facts but we are of opinion that the determinative principles have been decided. The question arises

by reason of the fact that, whereas under subsection (2) of said statute relating to estates acquired by an intestate, provides by express language for representation of said brothers and sisters of the whole and half blood, while in subsection (3) relating to ancestral property, there is to some extent a lack of direct expression on the point.

It is conceded that if Len Wilson, the half-brother, who was the father of the two defendants, had survived the intestate, he would have been entitled to the land. It is so held in *Nesbit v. Bryan,* 31 Tenn. 468; *Chaney v. Barker,* 62 Tenn. 424; *Bates v. Sanders,* 168 Tenn. 365, 79 S.W.2d 41.

■ That is, those cases hold in effect that where a person owning land inherited from one parent dies intestate, and without issue, or brothers and sisters of the whole or half blood on the side of the transmitting parent, but leaving brothers and sisters of the half blood on the side of the other parent, and uncles and aunts on his transmitting parent's side, the said land will descend to the brothers and sisters of the half blood on the side of the other non-transmitting parent, although the land thereby passes entirely out of the blood of the parent from whom it was derived, for such is the statute. Thus we are to be guided and controlled by a proper interpretation of our statute rather than by the rule of the common law in regard to ancestral estates.

■ In the case of *In re Miller Wills,* 70 Tenn. 54, we are instructed that this whole statute, including all its divisions and subdivisions, must be construed together, for these divisions are in *pari materia.* We have been repeatedly so admonished by subsequent decisions over

the years. Therefore, for a more graphic presentation of the matter, we copy the entire statute of 31-101:

"31-101.  General rules of descent.—The land of an intestate owner shall be inherited in the following manner by his lineal descendants, collateral kindred, or ascendants:

"(1)  Regardless Of Source Of Title.  Without reference to the source of the intestate's title—

"(a)  By all the sons and daughters of the deceased, to be divided among them equally.  And if any child of said intestate shall have died in his lifetime, his lineal descendants shall represent their parent, and be entitled to the same portion of the estate of the deceased as their parent would have been entitled to if living.

"(b)  If there be no issue, nor brothers or sisters nor their issue, and either parent be living, then by such parent.

"(2)  Estate Acquired By Intestate Who Died Without Issue.  If the estate was acquired by the intestate, and he died without issue, his land shall be inherited—

"(a)  By his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided among them equally.  And if any such brother or sister died in the intestate's lifetime, leaving issue, such issue shall represent their deceased parent, and be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to if living.

"(b) In default of brothers and sisters and their issue, the land shall be inherited by the father and mother of the intestate as tenants in common.

"(c) If both parents be dead, in equal moieties by the heirs of the father and mother in equal degree, or representing those in equal degree of relationship to the intestate, but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who are nearest in blood to the intestate, shall take in preference to others more remote.

"(3) Land Coming From Parent Or Ancestor Of Parent. Where the land came to the intestate by gift, devise, or descent from a parent, or the ancestor of a parent, and he die without issue—

"(a) If he have brothers or sisters of the paternal line of the half blood, and brothers or sisters of the maternal line also of the half blood, then the land shall be inherited by such brothers and sisters on the part of the parent from whom the estate came, in the same manner as by brothers and sisters of the whole blood, until the line of such parent is exhausted of the half blood, to the exclusion of the other line.

"(b) If he have no brothers or sisters, then it shall be inherited by the parent, if living, from whom or whose ancestors it came in preference to the other parent.

"(c) If the transmitting parent be dead, the other surviving parent shall take.

"(d) If both parents be dead, then by the heirs of the parent from whom or whose ancestor it came."

"31-102. Rules of descent beyond grandchildren and nephews and nieces.—The same rules of descent shall be observed in lineal descendants and collaterals, respectively, when the lineal descendants are farther removed from their ancestors than grandchildren, and when the collaterals shall be farther removed than children of brothers and sisters."

By way of a general summary of the entire statute, it would seem correct to say that subsection (1) without reference to the source of the intestate's title provides by par. (a) for descent of lands of the intestate to the sons and daughters of the deceased intestate equally, with representation *per stirpes* by lineal descendants of any deceased son or daughter; then by par. (b) if there be no issue nor brothers or sisters nor their issue of the deceased intestate, then by either parent, if living.

If, however, there be surviving brothers or sisters, or their issue, but no issue of the testator surviving, then the devolution is to be determined by whether or not the intestate acquired the land by any method other than by gift, devise or descent from a parent, or the ancestor of a parent. If the land was so acquired by the intestate and he died without issue, then under subsection (2) the land descends to the brothers and sisters of the whole and half blood equally, with representation of any such deceased brother or sister by his surviving issue *per stirpes;* but if there be no surviving brother or sister or the issue of same; then under par. (b) the land is inherited by the father and mother as tenants in common; if, however, both parents be dead, then par. (c) comes into play.

On the other hand, if the land was acquired by the intestate by gift, devise or descent from a parent or the

ancestor of a parent and he die without issue, then under subsec. (3) (a), if there be half brothers or sisters of the paternal line and half brothers and sisters of the maternal line, then those on the part of the parent from whom the estate came shall inherit in the same manner as brothers and sisters of the whole blood until that line of the half brother is exhausted, before the other line of the half blood can be let into the inheritance.

In *Nesbit v. Bryan, supra,* it is said that the effect of this part of the statute is only to *postpone* the half blood of the line from which the estate did not descend, until the line of brothers and sisters from which the inheritance descended is exhausted. Where the line of brothers and sisters of the half blood, on the part of the ancestor from whom the estate descended, is exhausted, the estate shall descend to the half blood of the other line; or where the intestate died without brothers or sisters of the whole or half blood, on the side of the parent from whom the inheritance came, but leaving brothers or sisters of the half blood of the other line, the latter will inherit.

Now, looking to the language again of subsec. (3) (a) to-wit, "in the same manner as by brothers and sisters of the whole blood", how do the brothers and sisters of the whole blood inherit? The answer is found under Note 16 of the Code section, where it is stated:

"Where the intestate dies without issue, his lands descend to his brothers and sisters and their issue, *per stirpes,* such issue in each descending line taking by way of representation of the deceased parent, without any limit to the representation. *Alexander v. Wallace* (1881), 76 Tenn. 569; *Wilson v. Morris* (1894), 94 Tenn. 547, 29 S.W. 966; *Forrest v. Porch* (1898), 100 Tenn.

391, 45 S.W. 676; *Barnes v. Redmond* (1912), 127 Tenn. 45, 152 S.W. 1035. See *Parrish v. Groomes* (1874), 1 Cooper's Tenn.Ch. 581; *In re Miller Wills* (1878), 70 Tenn. 54; *Kimbo (Kimbro) v. Johnston* (1885), 83 Tenn. 78.

Thus it appears by necessary inference and logical deduction that representation of deceased brothers and sisters of the half blood on the part of the parent from whom the estate came is provided for, because they inherit in the same manner as brothers and sisters of the whole blood and the purpose of this subsec. (3) (a) is not to define the manner of inheritance of the whole blood; that is determined from a reference to subsec. (2) (a). Moreover, the use of the word "line" must have material significance; the statute speaks of the preferred line and then the last phrase of that subsection is "to the exclusion of the other line". That carries a sense of succession or representation.

Now let us examine subsec. (3) (b) providing for the case where the intestate have no brothers or sisters. It will be noted that while there is no mention of the *issue* of such brothers or sisters, yet the Court has uniformly predicated its decisions on the fact that, among other things, there was *no issue of a deceased brother or sister*. See *Nesbit v. Bryan, supra; Beaumont v. Irwin,* 34 Tenn. 291; *Towls v. Rains,* 49 Tenn, 355; *In re Miller Wills, supra,* in which cases it is *Held* that where land descends from father to the son, who died intestate, without issue, brothers or sisters, *or the issue of such,* they will descend to the heirs of his father, unless his mother be living, but to her, if living.

In so holding, the court was necessarily correlating subsections (2) and (3).

We believe that our general outline of the entire statute is consistent with the course of decision of our cases and with the cross references appearing in the statute itself as set out in Shannon's 1917 Code; and we believe that our construction of subsec. (3) (a) is consistent not only with the cases cited above but with the concensus of the bar over a long period of years; we, therefore, hold that the Chancellor was in error in overruling the demurrer.

The decree below is reversed and a decree will be entered here sustaining the demurrer and dismissing the bill with prejudice.

NOTE: There was a statement in the brief of appellees to the effect that the appellants had not complied with the rules of the court with reference to brief and assignments of error, although there was no motion made to dismiss the appeal on that ground. We do not approve the action of the appellants' counsel in attempting to incorporate the brief filed in the lower court by reference to same as it appears in the transcript but we had no difficulty in finding out the question to be decided and for that reason, have not seen it desirable to make reference to same in the body of the opinion.