## WILSON *v.* MORRIS.

94 547
c116 465
116 467

(*Nashville.* March 15, 1895.)

1. WILL. *Widow entitled to exempt articles.*

The widow is entitled to all articles exempt to her by statute, under the husband's will providing that after his personal estate is "settled up and closed," the proceeds or residue shall be divided between his widow and only child "as the laws of the State of Tennessee direct." (*Post, pp. 548–560.*)

Cases cited and approved: Alexander *v.* Wallace, 8 Lea, 569; 25 Beavan, 163; 23 Beavan, 436; L. R., 20 Eq., 410; 39 Mich., 464 (S. C., 33 Am. Rep., 418); 5 N. J. Eq., 349; 24 Pa. St., 394.

2. SAME. *Widow entitled to year's support.*

And the widow is entitled to year's support under the provisions of such will of the husband. (*Post, pp. 548–560.*)

3. SAME. *Widow entitled to half of residue.*

And the widow is entitled to one half of the residue of the personal estate, after deducting debts, funeral expenses, and special legacies directed to be paid out of the personalty, under the provisions of such will of the husband. (*Post, pp. 548–560.*)

4. SAME. *Widow entitled to half of any residue of special legacy.*

And the widow is entitled to one half of what may remain at the beneficiary's death of a specific sum set apart by such will of the husband to be used so far as necessary for the support of his imbecile sister. (*Post, pp. 548–560.*)

5. SAME. *Widow entitled to homestead.*

And the widow is entitled to homestead, as well as dower, out of the husband's real estate, notwithstanding such will may further provide that his real estate should be retained by the family, and that his widow should be entitled to dower out of same, without mentioning homestead. (*Post, pp. 560, 561.*)

Case cited and approved: Jarman *v.* Jarman, 4 Lea, 671.

Wilson *v.* Morris.

6. CHANCERY PLEADING AND PRACTICE.

A personal representative is not entitled to decree, without proof, upon his averment in the bill, which is denied by the answer, that he had returned full inventories of the estate. (*Post, p. 561.*)

Case cited and approved: Bank *v.* Jefferson, 92 Tenn., 537.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

STEGER, WASHINGTON & JACKSON for Wilson.

SMITH & DICKINSON for Morris.

BEARD, J. Robert C. Morris died in 1892, after having made a last will and testament, in which complainant was named as executor. The testator left surviving him a widow, the defendant, Kate Morris, and an only child, the wife of complainant, who are the principal beneficiaries of this will. A difference having arisen between them as to their respective interests under the will, this bill was filed by the executor for its construction.

While the sixth clause and a part of the seventh clause have produced this controversy, yet it is proper, in order to understand the conclusions reached by us, to give a synopsis of the other clauses of the will. By the first, the testator directs all his debts, and

his funeral expenses, to be paid as soon as can be done conveniently after his death; by the second, he sets apart, in the hands of his executor, a fund of $5,000, to be used by him for the support of an imbecile sister of the testator, Mary Ann Morris, as far as may be necessary during her life, and by the third, fourth, and fifth clauses he gives moneyed legacies to different parties. The sixth clause is as follows: "It is my desire and request, that my personal estate be settled up and closed with as much dispatch as is convenient after my decease, and that the proceeds of the same be divided between my beloved wife, and daughter, Sallie Wilson, my only child, as the laws of the State of Tennessee direct." The seventh clause, as far as it is necessary to give it here, is as follows: "My real estate, situated in Hamilton County, Tenn., near the city of Chattanooga, is increasing in value, and I advise that it be retained by the family. My wife will be entitled to a portion of this tract of land as dower during her life."

Upon this will, it is now insisted by the executor, that it is his duty to pay the debts of the estate and the legacies, and set apart the $5,000 for the benefit of the imbecile sister referred to, and when this has been done, then, under the sixth clause, he is to divide whatever surplus there may remain of the personal estate, equally between the widow and the daughter of the testator, and that this share of the widow in this surplus is the full measure of her

interest in the personal estate. It is also insisted
by him that, while the widow can claim dower out
of the realty, she is not entitled, under the will, to
a homestead. On the other hand, the contention of
the widow is, that upon a proper construction of the
will, she is entitled, out of the personal estate, as
follows: First, to the articles exempt to a widow
under the statute; second, to a year's allowance; third,
to one half of what may be left after debts, special
legacies, and the $5,000 fund for the benefit of Mary
Ann Morris have been provided for; fourth, to one
half of any surplus left of this $5,000 at the death
of the beneficiary; and out of the real estate, to
homestead as well as dower.

The question, then, first for consideration is: What
interest does the widow take, under the will, in the
testator's personal estate? To answer this, it is neces-
sary to ascertain the intention of the testator in di-
recting, as he does in the sixth clause, a division of
the proceeds of his personal estate between his wife
and daughter "as the laws of the State of Ten-
nessee direct."

That his wife was an object of the testator's af-
fectionate care and bounty is evident from the will,
and it is apparent that he does not cut her off from
the articles exempted by statute to widows, and from
the year's allowance, by the use of inhibitory words.
It is true that, under § 3125 of the (M. & V.)
Code, only widows whose husbands die intestate, or
widows who dissent from the wills of their deceased

husbands, are entitled to this allowance, and, as Mrs. Morris is in neither of these classes, she would not be entitled to the benefit of this statute, unless the will of the testator gives it to her expressly, or by words of necessary implication. It is incumbent on her to show that the testator intended that she should take this allowance as she would have done had he died intestate.

An examination of 2 Jarman on Wills, 674 *et seq.* (Randolph & Talcott's Ed.), discloses that wills containing clauses like the one in question, that is, referring the distribution of testators' estates "to the statute of distributions," or "to the law as it directs," have been fruitful sources of litigation. As was said by the Master of Rolls in *Starr* v. *Newberry*, 23 Beavan, 436, "all such wills have peculiarities and inconsistencies which, if pointed out to the testator, would have been avoided." In each case, however, it has been the purpose of the Court to ascertain from the will itself the intention of the testator, and then to give the instrument that construction which will, if possible, effectuate that intention, if it be a legal one.

It is to be observed that the testator in the will before us, in this sixth clause, after directing that his personal estate shall be settled up and closed with as much dispatch as is convenient, then provides that its proceeds be divided "between his beloved wife and daughter"—not equally, nor in any other fixed proportions, but as "the laws of the

State of Tennessee direct.'' In other words, this clause seems to indicate that the testator was satisfied that the general laws of the State, with regard to the distribution of the personalty of one dying intestate, leaving a widow and child, were wise and just, and he therefore referred the disposition of his personal estate to those laws, in so far, at least, as their application may be consistent with his provision for special objects of his bounty that these general laws would not recognize. Evidently he does not intend to, nor does he, die intestate as to so much of his personal estate as his widow and child are to take, but, after distinctly naming them as the objects of his love and care, instead of making an arbitrary division between them, is content, so far as they are concerned, that the laws, as in the case of intestacy, should direct the division. While naming the wife and child as among his preferred legatees, he leaves it to these general laws to fix the measure of their respective interests.

*Holloway* v. *Radcliffe*, 25 Beavan, 163, is a leading and instructive case on this point. The will in that case gave the property to the widow for life, and, after death, to the testator's son, if any son was then living, but, if this son died during the life of the widow, then the executors were directed to convert the property into money, and, after payment of all expenses incident to such conversion, then, as to this balance, the testator uses these words: ''One moiety, or equal half part thereof, I

give unto and equally amongst my legal representatives, in such and the like manner as if the same had been to be paid under the statute of distributions.'' The son died in the lifetime of the mother, and then the latter died. The contingency having occurred upon which this clause was to take effect, a bill was filed for its construction. It will be seen that the difficulty was increased by the use of the words ''equally amongst,'' inasmuch as the statute of distribution did not provide for equality amongst those who were determined by the Court to be the beneficiaries of this bequest. The Master of the Rolls, Sir John Romilly, after showing that the words ''legal personal representatives'' were flexible in their nature, and were not used in this will in the technical sense, says: ''By referring to the statute to point out the persons who are to take, the testator has expressed that those are to take whom the statute of distribution designates, certain persons who are living at the death of the testator. * * * The words, therefore, designated the next of kin of the testator who survived him, according to the statute of distributions.'' His widow and his son were his next of kin at the time of his death, in view of the above holding, and, if the distribution was made according to the statute, then the widow was entitled to one third and the son to two thirds of this one half or moiety.

But it was insisted for the widow's representatives that this division was in violation of the terms

of the legacy, which provided that it should be divided "equally amongst" the testator's next of kin, and that this would give to the widow one half, instead of one third, of this moiety. To this, however, the Master of the Rolls replied it was true "the testator gave this moiety equally between the persons so ascertained; still, the statute of distributions is referred to not only for the purpose of pointing out who are the persons·to take, but also the further purpose of pointing out the manner in which they are to take; that is, the will directs that the persons pointed out by the statute are to take this moiety in the like manner prescribed by the statute." It was accordingly held that this moiety passed one third to the widow and two thirds to the son.

Again, in *Starr* v. *Newberry, supra,.* a·testator gave the residue of his personal estate to his executors, to pay the interest to his wife "during the time of her natural life, or until she should marry again, in either of which events, to his child, if any, absolutely;" but, should his wife die or marry again without leaving a child, or should such child die before attaining the age of twenty-one years, then the trustees were directed to pay such moneys to "such person or persons as might be legally entitled to the same under the statute of distributions." A child was born after testator's death, and died while an infant, and the widow married again, and, in a controversy over the construction of the will,

it was held that the persons who took under this clause were the next of kin at the testator's death, and that the will, by its reference to the statute of distributions, contained a clear and distinct expression that, in the event stated, the testator's estate was to go as if he had died intestate.

In *Fielder* v. *Ashworth*, L. R., 20 Eq., 410, the words of the will were: "To distribute the residue to my relatives, share and share alike as the law may direct." In construing these words, the Vice Chancellor said: "I think the intention of the testator was that, not having made up his mind how to divide his property, and probably not knowing how it would go under the statute of distributions, he thought it better to leave it entirely to the law, having confidence that it would then be divided in the most proper manner. The only mode of effecting this object is to disregard the words 'share and share alike,' and order the property to be divided as the law directs; that is, according to the statutes of distribution."

The case of *Alexander* v. *Wallace*, 8 Lea, 569, is an instructive one. There the testator, in prior clauses of his will, having provided for the payment of his debts and certain legacies, proceeds: "I direct that the remainder of my estate, both real and personal, be divided among my heirs according to the laws of the State of Tennessee now in force, none preferred, none discriminated against." The Court say that the obvious intention of the

testator, in the clause in the will now before us, was to refer to the laws of the State of Tennessee now in force, not only for the purpose of pointing out the persons who were to take, but also for the purpose of pointing out the manner in which they are to take. The result was, the Court held that the proper construction of this clause was that the issue of the testator's deceased brothers and sisters would take the real estate under the statutes of descent, "such issue in each descending line taking by way of representation of the deceased parent, and therefore, *per stirpes*, without any limit to the representation," and that the children of the deceased brothers and sisters, to the exclusion of the remoter descendants, would take the personalty; and this was the result, notwithstanding the use by the testator of the words "none preferred, none discriminated against." In the opinion in this case, the Court refers approvingly to, and quotes from, the case of *Fielder* v. *Ashworth*, *supra*, and *Holloway* v. *Radcliffe*, *supra*.

Not only is this the rule of construction adopted by the Courts when the testator refers to the statute of distribution to determine the measure or quantity of his bounty, but, where the rights of the wife are involved, and a construction can be adopted consistent with the general intent discerned in the will, and favorable to those rights, the Courts lean to such construction. As, in *Riley* v. *Reynolds*, 39 Mich., 464. (33 Am. Rep., 418), the testator, in

his will, said, first, "to my wife, the provision made for her by the statutes of this State I deem sufficient;" and, after giving sundry legacies, concluded by giving to his son all the residue of his estate left after paying these legacies, etc. It was insisted that the first clause gave nothing to the widow; it was not a legacy; and, as the son took all after paying legacies, nothing could be deducted as a statutory allowance to the widow. The Court, speaking through Judge Cooley, said they were "unwilling to find in the will any such meaning when a construction consistent with a proper feeling is at least equally natural and reasonable." Concluding "that the construction most favorable to the widow should be preferred," the Court held that the wife took such a share as if the testator had died intestate.

In *Adamson* v. *Ayres*, 5 N. J. Eq., 349, the testator provided that his wife should have her lawful right of dower out of his estate, and it was held that, under these terms, she was not merely entitled to dower in land, but to her statutory third of his personal property. The Court said: "Estate includes both real and personal property. We are asked to substitute the word 'lands' for 'estate.' This would certainly relieve the will of all difficulty of construction, but it would leave the clause useless, and it would leave no object or motive in the testator for introducing it but that of putting in the face of his will a clear intention of cutting off his wife from all interest in his personal estate."

In Stineman's appeal, 34 Pa. St., 394, in a will somewhat similar to the one at bar, the Court held that the intestate laws of the State were to be looked to for the measure of the widow's claim, and that construction was adopted which gave her the largest right under the laws.

But it is insisted in the argument for the executor that the words "settled up and closed," in the early part of this clause, necessarily limit the meaning of the later words, "as the laws of Tennessee direct," and that the testator meant to say that, after all the debts and obligations had been paid, then the remainder should be divided between the wife and daughter, under Subsection 1, § 3278, of the M. & V. Code. If the words of that clause were taken literally, then we would have a clause where the testator, notwithstanding the fact that he had clearly indicated in the other clauses of his will other objects of his bounty, yet, by this clause defeated these objects; for, in this clause, he directs, not the remainder of his personal estate that is left after the settlement of his debts and the payment of the other legacies "to be settled and closed up," but his "personal estate" as a whole, and its proceeds divided between his wife and daughter. But this, however, would be to stick in the bark, and adopt a construction the result of which would be to defeat the clear intent of the testator.

It is equally apparent to us that the argument of counsel for the executor places an unwarranted

stress on the words "settling up and closing," as its effect is to make useless the words "as the laws of Tennessee direct." If the view of the executor is correct, then it was only necessary for the testator to have directed a division of his personal estate, and the provision of the Code above referred to, without more, would have supplemented the cause and worked the result the executor now insists upon. But as this view deprives the clause, "as the laws of the State of Tennessee direct," of all force, the Court should adopt a consistent construction, if such can be found, that will give it some efficiency. In the words of the Court in *Adamson* v. *Ayres, supra,* "we ought rather to suppose it was intended for a purpose, and that a beneficial one to the widow."

Again, if the testator had intended to cut off his wife from all the benefit that the general laws would give to her as his widow, and direct an equal division of his personal estate between his daughter and widow, the simplest way to have provided for this would have been for him to say in his will that, after paying the debts, legacies, etc., the proceeds of his personal estate should be divided equally between the two. This, or some equivalent phrase, would have avoided all confusion, and should have fixed his intention beyond debate. Using, however, the phraseology in question, it seems difficult to resist the conclusion that it was adopted with an understanding of its import, and the purpose of giving his wife the benefit of the best the law could do

for her, consistent with the other provisions of the will.

In addition, it will be noticed that the testator in this clause uses the plural noun "laws"—the division of the personal estate to be made "as the laws of Tennessee direct." By the use of this word he indicates that the division between the "wife and daughter" is to be made with regard, not to one law, but to all the subsisting laws of the State regulating the division of such an estate between a widow and her child or children whenever intestacy has occurred, subject alone to the condition indicated in the conclusion of the last paragraph above.

The result is, that we hold that Mrs. Morris is, first, entitled to have set apart to her the articles of personal property exempted under the statute. Second, a year's allowance out of the personal estate. Third, to one half of what may remain unexhausted of the fund set apart for the support of Mary Ann Morris at the death of the beneficiary; and, fourth, to one half of the proceeds of the personal estate, after the $5,000 above referred to is set apart and the moneyed legacies are paid. The Chancellor's decree holding otherwise is reversed.

As to the realty, the Chancellor allowed the widow dower, but declined to give her homestead. Without extending this discussion, it is sufficient to say, that we find that she was entitled to homestead as well as dower, and in so far as the Chan-

cellor held otherwise his decree is reversed. *Jarman* v. *Jarman,* 4 Lea, 671.

In the bill the executor alleges that he has made perfect inventories of the personal estate. This allegation is denied in the answer. In this condition of the record, and without any proof on this issue, the Chancellor held with complainant. This was error. *Bank* v. *Jefferson,* 8 Pickle, 537.

The cause will be remanded to the Chancery Court for the purpose of carrying out the directions of the decree, to be entered in accordance with this opinion.

The costs of this Court, and the Court below, will be paid out of the funds of the estate.