Briscoe *v.* Vaughn.

---

# BRISCOE *v.* VAUGHN.

## (*Knoxville.*    September 30, 1899.)

1. HOMESTEAD.    *Transferable as a life estate.*

 Homestead, when assigned, becomes a vested life estate in the lands embraced, and passes by deed of the owner in the same manner as any other life estate.    (*Post pp. 311–316, 318.*)

 Cases cited: Cowan *v.* Carson, 101 Tenn., 523; Thompson *v.* Stacy, 10 Yer., 493; White *v.* Nashville, 2 Swan, 364; Latta *v.* Brown, 96 Tenn., 356.

2. SAME.    *Assignment of.*

 A levy on lands of less value than $1,000 "subject to the homestead rights" of the debtor, operates as an assignment of homestead that invests him with a life estate therein that he may convey by deed.    (*Post, pp. 311–316.*)

3. SAME.    *Abandonment of.*

 Since the Act of 1879 the right of homestead is not dependent upon occupancy, and hence assigned homestead is not abandoned by removal from the premises, except by permanent removal beyond the limits of the State; or by other unequivocal. attendant act showing a clear intention to abandon homestead and not to receive its benefits.    (*Post, pp. 316–318.*)

 Acts construed: Acts 1879, Ch. 171.

 Case cited and approved: Farris *v.* Sipes, 99 Tenn., 299.

4. SAME.    *Same.*

 The rights of the vendee of assigned homestead are not affected by the vendor's permanent removal from the State after the sale.    (*Post, pp. 317, 318.*)

---

### FROM HAWKINS.

---

Appeal from Chancery Court of Hawkins County. HUGH G. KYLE, Ch.

Briscoe v. Vaughn.

J. O. Phillips for Briscoe.

S. F. Powell and W. P. Gillenwaters for Vaughn.

Wilkes, J. This cause presents a single question of law that is at once interesting to consider and important to properly determine. It is: What are the rights of the alienee of a homestead transferred after it has been set apart by metes and bounds or other equivalent proceedings?

The facts found by the Court of Chancery Appeals, so far as necessary to be stated, are that complainants, on the 26th of August, 1895, obtained a judgment against defendant, J. C. Vaughn, for $217.77 and costs. An execution issued and was levied on a tract of land belonging to Vaughn, the levy reciting that it was made "subject to the homestead rights of Vaughn." The land was sold April 25, 1896, and the complainants became the purchasers at $21, but soon thereafter advanced their bid to $51. The land was not redeemed within the two years allowed by law, and the Sheriff made the purchasers a deed. These proceedings are all regular and not questioned. At the time of the levy and sale, Vaughn and his wife resided on the land and were entitled to homestead therein, and the land was worth less than $1,000. After the sale, on the 16th of November, 1896, Vaughn and wife conveyed the land to Berry and wife, the deed

being without any reservation in the conveyors, and possession was given to the conveyees. Vaughn and wife thereupon removed to the State of Texas, where they have since resided. On November 17, 1896, Berry and wife conveyed the land to defendant, Nancy Trent, and she went into possession and is now in possession, claiming under the deed of Berry and wife. Vaughn had bought this land originally from Berry and wife, and received a conveyance from them April 15, 1894, the consideration being $135 in cash and a note for $75. This deed was not registered until November 13, 1896. No lien was retained in it for the $75 note, but complainants knew when they made their levy and sale that the note was unpaid and was the balance of purchase money on the land. Vaughn and wife reconveyed the land to Berry and wife for this balance of purchase money and interest that had accrued upon it. The consideration for the sale to defendant Trent was $115 cash and her note for $75 due May 1, 1897.

The bill in this case was filed July 6, 1898, against Vaughn and wife and Nancy Trent for the purpose of obtaining possession of the land by complainants under their purchase. An agreed statement of facts was made substantially as we have given them. Complainants' insistence is that under their purchase at Sheriff's sale, they acquired title to the land, subject only to the

homestead right of Vaughn and wife, and when Vaughn and wife aliened the land, and especially when they removed to Texas, the homestead right was extinguished, and complainants at once became entitled to enter and take possession. Defendant's contention is that Vaughn and wife could and did convey their homestead right, or interest, and their subsequent removal from the State would not destroy that interest in the hands of their transferee, but that the latter could hold the land during the lives of Vaughn and wife or the survivor of them. The Chancellor held with the defendant and dismissed complainants' bill, and they appealed and assigned errors. The Court of Chancery Appeals reversed the Chancellor, and held complainants entitled to recover on the grounds, first, because the alienation of the homestead worked its forfeiture and let in the remainderman; and, second, that the same result followed the removal of Vaughn and wife from the State. The defendants have appealed to this Court, and assigned these holdings of the Court of Chancery Appeals as errors.

The latest published deliverance of this Court upon the homestead question is the opinion in the case of *Cowan et al.* v. *Carson,* 17 Pickle, 523. In that case, certain parties had bought land subject to a homestead in the widow. The homestead was set apart to her by metes and bounds, and she had sold it and put her alienee in possession.

It was insisted that this sale and delivery of possession worked a forfeiture and termination of the homestead right, and that the remainderman was therefore entitled to possession. It was said in substance that statutes creating homestead exemptions do not operate to restrain, in any particular, the voluntary alienation or mortgage of the homestead, unless it is so expressed, and that there is no such inhibition in express terms by our statutes. The cases are commented upon, and the conclusion is reached that a widow to whom homestead has been assigned by metes and bounds may alien her interest in the property without working a forfeiture, and the alienee will take as she held, and hold as she did, and likewise that she may lease the property and take the rents instead of occupying it. The Court of Chancery Appeals distinguish that case from the case at bar by saying there is a material difference between a homestead set apart to a widow, in right of her deceased husband, or out of his estate, and the ordinary homestead of a family; that there can be but one such homestead to a widow, and that the widow's right is fixed at the date of her husband's death, and is in the nature of an inheritance out of her husband's estate, but the head of a family may have a dozen or a hundred homesteads during his life, each one of which he forfeits or loses upon acquiring a new one. He can have only one at

a time, but he may have many in succession. That Court puts the hypothetical case of a party owning a homestead. The land is levied on and sold subject to the homestead. The party then sells his homestead and buys another tract of land, and that is sold, subject to the homestead, and the homestead right in that is sold, and so on for a dozen transactions, so that there may be a dozen homesteads existing or arising out of the right of one party; and this, the Court says, would be contrary to the spirit of the Constitution, which is that a man may have but one homestead. That Court says that such result would not follow if the homestead was treated as a life or other estate in the land, since in that event the party might have several homesteads, but it was of the opinion the homestead right could not, in the present case, be considered as an estate or interest in land and would continue only by virtue of continued occupancy. We are of opinion that all difficulty in the matter may be obviated by considering that there is a difference in the homestead right before and after assignment, just as there is a difference in the dower right before and after assignment. While the widow is entitled to only one-third interest in the land of her deceased husband as dower, that right to one-third hovers over the whole land as a right in her and an incumbrance or charge on the land, until it is assigned, and the dower

right does not become a vested one nor ripen into a freehold estate until dower is set apart by assignment by metes and bounds. A dower is not an estate, but only a right which attaches to the whole land before assignment, but after assignment it is an interest or estate for life, which is confined to the metes and bounds assignd for dower. *Thompson* v. *Stacy,* 10 Yer., 493; *White* v. *Nashville,* 2 Swan, 364; *Latta* v. *Brown,* 12 Pickle, 356.

So the homestead right hovers over the whole land until it is assigned by metes and bounds, or some equivalent act. One material difference between the two is that no matter what may be the value of the land, the widow can have dower in only one-third of it, and hence a designation by metes and bounds is necessary, while in the case of homestead, if the land does not exceed $1,000 in value, the homestead right will cover the whole of it. In such case there can be no other process of assignment by metes and bounds, except a sale of the tract subject to the homestead right, and such sale is a setting apart the whole of the tract as a homestead by its metes and bounds. Now, after assignment or location of the homestead as above, there is no practical difference between the dower and homestead rights, so far as the interest or estate of the persons holding them is concerned. While before the assignment there was no freehold estate and no interest, but a mere right, after the assignment

there is an interest and estate for life in each case. If this be correct, we can see no reason why such homestead, after it is set apart by metes and bounds, or, if the tract is worth less than $1,000, after it is sold subject to homestead, may not be aliened as well as a dower estate. Neither requires occupancy to continue its existence.

The Court of Chancery Appeals holds that the homestead which passes to a widow upon the death of her husband, if not an estate, is a *quasi* estate in the nature of an inheritance, and that she acquires it once for all, and hence it materially differs from the ordinary homestead when the husband, as the head of the family, is living, and in the latter case alienation defeats the right, while in the case of the widow it does not. Now it is apparent that if the widow's homestead right, or estate, is in the nature of an inheritance from her husband, and, taken in his right, it must be a similar right or interest to that which existed in the husband, and we are unable to see how the death of the husband can transform the homestead right which he had and elevate it to the dignity of an estate, when before it was a mere right, unless such a transformation is effected by the assignment by metes and bounds, or its equivalent.

Again, it is insisted that a widow may have only one homestead, and yet it is plain she may remarry again and again, if opportunity offers, and

with each husband she may acquire a new homestead right, nor does she thereby lose her original homestead; nor are we able to see why a husband may not have a succession of homesteads. It is apparent that he may acquire a succession of them, because he may sell each tract of land that he buys and defeat his homestead in it, and acquire the right in another. We cannot see why a husband may not, after his homestead is assigned him, sell it and vest an alienee with all his rights and acquire another, while his alienee holds the original homestead, not as his present homestead, but as an estate in land. The homestead sold, after sale is no longer that of the party selling, but belongs to the party buying, and the vendor may acquire another at a different place. It has never been held that a person may not sell his exempt property of any other kind and give to his purchaser a title, and yet acquire similar property again, which would be exempt.

The fallacy of the opposite holding is in assuming that the vendor of the homestead, after aliening it, still has some sort of interest in it, or control over it. He has neither. If the homestead right was dependent upon occupancy, then the contention of nonalienation would be correct; but since the Act of 1879 occupancy is not necessary. It is evident that if we should hold that in order to retain his homestead right after as-

signment the head of the family must continue
to occupy it, we impose a burden upon him and
a limitation upon it that must materially detract
from its value. It would follow that he could
not lease it or rent it, but must occupy and use
it in person, or lose its benefit. This would not
be a construction favorable to the right or con-
ducive to its value. But the Court of Chancery
Appeals was also of opinion that the homestead
right or estate which was aliened by Vaughn to
Berry, and thence to Trout, was determined and
terminated by the subsequent removal of Vaughn
and wife to Texas. We cannot assent to this
proposition. It is true that Vaughn and wife,
while the owner of the homestead right, or estate,
as it may be called, could abandon it; and this
they could do by leaving it and refusing to take
any benefit from it, whether living in the State
or removing from it. In the case of *Farris* v.
*Sipes,* 15 Pickle, 299, it was said that the home-
stead, like the other exemptions, was intended for
residents, and not nonresidents, and hence a widow
who had left the State before asserting her right,
or having her homestead assigned, could not, upon
re-entering the State, claim the right as against
a party who had purchased under a foreclosure
of her husband's deed while she was absent from
the State. This, we think, is correct, and we go
further and say that if after she or her hus-
band has made the claim for homestead, and had

it assigned and set apart by metes and bounds, or declared in the entire tract, they see proper to abandon it, and refuse to receive the benefit of it, they may do so, and thus let in the remainderman. But this is upon the idea of abandonment and surrendering all right in the land and all benefit arising out of it. But there is no such purpose in a sale or an alienation of the homestead. In such case, the purpose is to obtain the benefit of it, not, it is true, by subsequent occupancy, but by sale and the enjoyment of its proceeds, and perhaps their investment at another place. Abandonment is a question of law, it is true, but it is based upon the intent of the parties and the sale of a homestead is no more an abandonment of the land or benefits than is a sale and conveyance of a fee simple estate an abandonment of such land or benefits to be derived from it.

We are of opinion, therefore, that a homestead, when once assigned in any proper mode, is a full and absolute life estate in the land embraced, with every right of use or sale that attaches to any other life estate, with the exception that permanent removal from the State works a forfeiture and abandonment of it.

We are of opinion, therefore, that the Court of Chancery Appeals was in error in this case, and that Nancy Trent, the alienee of Berry and wife, has the right to hold the land under their

conveyance, and complainants are not entitled to its possession until the homestead estate terminates, and this, we think, is all that is involved in the case. Whether the homestead will cease upon the death of the husband or whether it will continue until the death of the wife, if she survives him, is a question not now properly arising for adjudication. The costs of the cause in this Court and in the Court below will be paid by complainants. It is said the Court should declare the deed of Vaughn and wife a cloud upon the remainder interest in any event, but this question we do not think is raised in this case, either by the pleadings or by proof, the evidence not showing that the defendant, Trent, is claiming any more than the homestead of Vaughn.