Mrs. Anna Keith Miller, Complainant, Appellant, *v.* Fidelity Bankers Trust Co., Executor *et al.*, Defendants, Appellees.*

(*Knoxville,* September Term, 1931.)

Opinion filed March 3, 1932.

—————

*On devise as affecting rights of wife and children in homestead, see annotation in 56 L. R. A., 38; 22 A. L. R., 512 et seq.; 68 A. L. R., 507; 13 R. C. L., 676; 28 R. C. L., 286.

Susong, Susong & Parvin, for complainant, appellant.

Phillips & Hale and W. N. Hickey, for defendants, appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

Following the death of Dr. J. E. Miller, his widow filed this bill against the Fidelity Company, executor of the will of the deceased husband, and other parties interested in the estate, seeking to have her homestead charged against certain property in the town of Rogersville which Dr. Miller had occupied as his home for many years and which he had specifically devised by his will to his nephew, Judge Hal E. Portrum. She prayed that this property be set aside to her as a homestead, and, if worth in excess of $1,000, that it be sold and her "homestead rights" be paid to her from the proceeds of the sale.

The estate consisted of both real and personal property of the estimated aggregate value of $53,144. The testator owed no debts of consequence and, after setting out in his will various specific bequests of small sums of money and of various items of personal property and after devising specifically to Judge Portrum the residence property above mentioned, he directed that all the residue of the estate, real, personal and mixed, be sold

and the proceeds distributed, $10,000 to his wife, $500 to each of two nephews, $5,000 to his sister, Mrs. Laura Webster, and the balance, if any, be equally divided between this sister and his wife.

The record shows that Dr. Miller was about seventy-five years old at the time of his death and his wife some twenty years younger; that the former wife of Dr. Miller had died some four or five years before his death, and that he had later married the complainant and had with her occupied, during their married life of some three and one-half years, the residence in question. It also appeared that Judge Portrum was a favorite nephew of the testator, who had no children, and that Judge Portrum had spent much of his time in intimate association with his uncle from his childhood up. In addition to this residence property, the testator left two other pieces of real estate, one a hospital building of an estimated value of $5,000, and a vacant lot of an estimated value of $1,000.

The bill was filed some two months after the probate of the will, to which answers were duly filed, in which the right of the complainant to homestead in said property was denied, unless she should dissent from the will, and in that event it was insisted that the homestead right should be charged against the real estate other than the home property, in view of the specific bequest of this particular property and the obvious intention of the testator, deducible from all of the attending circumstances, that this home place should become the property of the nephew, Judge Portrum; and that, under the circumstances, the widow, if not already chargeable with having exercised her election to take under the will by reason of her acceptance of certain properties thereunder, should be put to her election.

Much proof was taken and the Chancellor decreed for the complainant, holding that the widow was not required to elect with respect to her homestead rights involved, but was entitled both to take under the will and to have the homestead assigned to her in the residence property. An appeal was taken from this decree to the Court of Appeals and the cause was transferred to the Middle Division because of the interest of Judge Portrum therein, and his disqualification as a member of the Court of Appeals of the Eastern Division. The Court, in an opinion by presiding Judge Faw, reversed the decree of the Chancellor. This Court has considered a petition duly presented for *certiorari,* but, being satisfied that there is no error in the decree of the Court of Appeals, this petition is denied.

The opinion handed down by Judge Faw is comprehensive and convincing, and contains a discussion of the interesting legal question involved which is so satisfactory that it is adopted and incorporated herein.

After a very full review of all the facts, including a copy in full of the will and extensive excerpts from the pleadings and the testimony, this learned opinion proceeds as follows:

"Through assignments of error the appellant insists, first, that the Chancellor erred in holding and decreeing that complainant, the widow of the testator, was not, by the terms of the will, put to an election with respect to the homestead rights involved in this case, and in not holding that the gift or devise of the testator's 'residence property' to appellant Portrum necessarily excluded any homestead rights of the complainant therein, so that she was put to her election between the will and the rights she would take as widow.

"The remaining contentions presented by appellant's assignments of error are in the alternative, and will not require consideration if the first assignment of error, *supra,* is well made.

■ "It may be well to preface our consideration of the question of election raised by the first assignment of error with an inquiry as to the nature and character of the 'homestead right' of Dr. Miller, and of his widow upon his death.

" 'There is a difference in the homestead right before and after assignment, just as there is a difference in the dower right before and after assignment. While the widow is entitled to only one-third interest in the land of her deceased husband as dower, that right to one-third hovers over the whole land as a right in her and an incumbrance or charge on the land, until it is assigned, and the dower right does not become a vested one nor ripen into a freehold estate until dower is set apart by assignment by metes and bounds. A dower is not an estate but only a right which attaches to the whole land before assignment, but after assignment it is an interest or estate for life, which is confined to the metes and bounds assigned for dower. *Thompson* v. *Stacy,* 10 Yerg., 493; *White* v. *Nashville,* 2 Swan, 364; *Latta* v. *Brown,* 12 Pickle, 356.

" 'So the homestead right hovers over the whole land until it is assigned by metes and bounds, or some equivalent act. One material difference between the two is that no matter what may be the value of the land, the widow can have dower in only one-third of it, and hence a designation by metes and bounds is necessary, while in the case of homestead, if the land does not exceed $1,000 in value, the homestead right will cover the whole of it. In such case there can be no other process of as-

signment by metes and bounds, except a sale of the tract subject to the homestead right, and such sale is a setting apart the whole of the tract as a homestead by its metes and bounds. Now, after assignment or location of the homestead as above, there is no practical difference between the dower and homestead rights, so far as the interest or estate of the persons holding them is concerned. While before the assignment there was no freehold estate and no interest, but a mere right, after the assignment there is an interest and estate for life in each case. . . . We are unable to see how the death of the husband can transform the homestead right which he had and elevate it to the dignity of an estate, when before it was a mere right, unless such a transformation is effected by the assignment by metes and bounds, or its equivalent.' *Briscoe* v. *Vaughn,* 103 Tenn., 308, 313-315, 52 S. W., 1068.

"In *Coile* v. *Hudgins,* 109 Tenn., 217, 221, 70 S. W., 56, the Court referred to *Briscoe* v. *Vaughn, supra,* as holding that 'the homestead stands upon a different plane or basis after its assignment than before,' and, the Court said: 'Before its assignment it is a mere right which hovers over the whole land, and does not rise to the dignity of an estate. After assignment it becomes a life estate, and can be rented, leased, or sold, and the party to whom it is thus leased, rented or sold will have the same estate as the homesteader had previously.'

"In *Carver* v. *Maxwell,* 110 Tenn., 75, 82, 71 S. W., 752, the Court said: 'The Court of Chancery Appeals found as a fact that the lot was worth less than $1,000. This being true, there was no necessity for the assignment of the homestead in order to give the property that character, and to vest the life estate. It does not appear that Henry Johnson left any estate other than this small lot,

and, as it is now worth less than $1,000, the assignment of it by order of Court would have been an idle ceremony. It was unerringly designated by the law, under the facts stated, as the homestead, of the decedent's widow.'

"Again, in *Beeler* v. *Nance,* 126 Tenn., 589, 150 S. W., 797, the Court held that an 'assigned homestead' is a vested estate in the land, and that an 'unassigned homestead' is a mere floating right.

"In *Mitchell* v. *Denny,* 129 Tenn., 366, 371, 164 S. W., 1140, the Court said: 'Whether this homestead right was a vested estate in the land or a mere floating right in an unassigned homestead depended on the value of the land. If its value was in excess of $1,000, the right was a floating one; if its value was not in excess of $1,000, then under our cases the right was a vested one.' See also *Nelson* v. *Theus,* 5 Higgins, 87.

"In the light of the foregoing authorities, and the proof with respect to the value of Dr. Miller's 'residence property,' it is evident that his homestead right was not a vested one, but was a mere floating right hovering over the whole of his land, and it was this 'floating right' which 'inured to the benefit of his widow' upon his death, unless she was deprived thereof by electing to accept the provisions made for her in the will of her husband.

"The general rule on the subject of 'election between homestead rights and gifts by will' is stated in Page on Wills (1 Ed.), sec. 716, p. 856, as follows:

" 'Where testator has so disposed of his property by will that some provision of the will will be defeated if the widow is given both the property devised to her by will and the homestead, the widow must elect between her rights under the homestead law and her rights under the will.'

"The rule just quoted from the text of Page on Wills is well supported by numerous adjudged cases, some of which are as follows:— *Meech* v. *Meech,* 37 Vt., 414; *Re Wells' Estate* v. *Congregational Church,* 63 Vt., 116, 119; *Re Blackmer's Estate,* 66 Vt., 46, 50; *Cowdrey* v. *Hitchcock,* 103 Ill., 262, 273; *Carr* v. *Carr,* 177 Ill., 454, 458; *Helm* v. *Leggett,* 66 Ark., 23, 25, 48 S. W., 675; *Stokes* v. *Pillow,* 64 Ark., 1, 5, 40 S. W., 580; *Hazelett* v. *Farthing,* 94 Ky., 421, 42 Am. St. R., 365; *Davidson* v. *Davis,* 86 Mo., 440, 444; *Burgess* v. *Bowles,* 99 Mo., 543, 12 S. W., 341, 13 S. W., 99; *Ball* v. *Ball,* 165 Mo., 312, 65 S. W., 552, 555; *Stoepler* v. *Silberberg* (Mo.), 119 S. W., 418, 422; *Hellman Commercial Trust & Savings Bank* v. *Looney* (Mo.), 197 S. W., 144, 147; *Jenkins* v. *Jenkins* (Mo. Court of App.), 234 S. W., 365.

"Other cases are digested in an Annotation on the subject of 'when is widow put to her election between provision made for her by her husband's will and her homestead,' in 22 A. L. R., pp. 512-517.

"The Vermont case of *Meech* v. *Meech, supra,* may well be classed as the leading case on this subject. It has been cited and followed in numerous subsequent cases, not only in Vermont but in other jurisdictions as well. The homestead statute of Vermont which governed the Meech case was quite as favorable to the homestead as our Tennessee constitution and statutes. On this point, the Court (in the Meech case) said: 'The intent of the homestead Act is to create a home for the poor debtor and his family which shall not be liable for his debts, and which upon the death of the husband shall descend to the widow and minor children. The spirit of the Act and all its provisions indicate that it was intended that the husband should not have the power by will to devise it away from his wife and minor children. He cannot alienate or

mortgage it without the consent of the wife. If he die leaving a wife and children it shall vest in them free from his debts. It is not to be divided among his other heirs or go to pay his creditors. But the home is preserved for the family.'

"As seen from the above quotation, the Vermont Court held that the husband did not have the power by will to devise the homestead away from his wife; but nevertheless the Court held that if it appeared from the will that it was not the intention of the testator that his widow should have both the homestead and the provision made for her in his will, then she must elect which she will have.

"With respect to the manner in which the intention of the testator must appear, the Court said: 'The intent to exclude the widow from her legal right must clearly appear; if it be doubtful, she is not to be excluded. It is not necessary that this should appear in express words. If the terms of the instrument clearly and plainly imply it—if there are provisions in the will which are inconsistent with the intent of allowing her homestead, then the Court will find the intent to exclude.'

"Applying these principles to the facts of that case, the Court there held that a homestead right in the widow would be inconsistent with the devise of the family mansion and grounds to the testator's son, and the widow could not take both under and against the will, and therefore she must elect.

"The principle running through the cases is that if the provisions of the will are inconsistent with the theory that the widow could take the provision made for her in the will and also her homestead, without defeating or impairing devises or bequests to others (*Cowdrey* v. *Hitchcock, supra*), or, stated differently, if the provi-

sions of the will are incompatible with the allotment of homestead to the widow (*Hellman Commercial Trust & Savings Bank* v. *Looney, supra*), then the widow must elect.

"Thus far we have not taken cognizance of the *Tennessee cases* bearing upon the doctrine of election by the widow as between the provisions of her husband's will and her right to homestead, which, of course, must control the decision of *this Court,* if the point here in judgment has been decided by our Supreme Court.

"Excluding *Jarman* v. *Jarman,* 4 Lea, 671, which involved an insolvent estate, the first reported opinion of a Tennessee Court in which the subject is discussed, so far as we have been able to find, is the opinion of the Court of Chancery Appeals (prepared by the Honorable JAMES C. BRADFORD, sitting as Special Judge), in the case of *Wooten* v. *House* (1895), 36 S. W., 932. That portion of the opinion in *Wooten* v. *House* dealing with the question here under consideration reads as follows:

" 'The Chancellor decreed that Mrs. House was entitled to homestead in the real estate left by her husband at his death. The conclusion we have reached on this question is not free from doubt. The widow's claim of homestead is inconsistent with the provisions of the will, and, upon reason, it would seem that having the right to dissent from the will, and having failed to exercise it, she cannot now claim homestead. This view is sustained by the Supreme Court of Vermont in the case of *Meech* v. *Meech,* 37 Vt. 419. In that case the testator devised by will to his wife, for life, four acres of land, which included the family mansion and grounds. Then a larger tract, comprising the four acres within its boundaries, was devised in fee to his son, Ezra, with this clause ap-

pended to the description: 'Excepting from the lands herein devised to Ezra the life estate which I have given to my wife, in about four acres thereof, and the lands and buildings standing on the four acres.' The house on the four acres was the homestead, from which the widow's homestead must have been taken, if she had any. The will stated that the provision for the widow was to be in lieu of dower, but nothing was said of homestead. The Court, in its opinion, affirmed the generally recognized doctrine that, if the terms of the will do not express a clear intention that the bequests are made in lieu of homestead, then she will take the bequests in the will, and also her estate of homestead under the will. But it was further stated that, if the terms of the will express a clear intention that the bequests are made in lieu of homestead, then the widow will be put to her election whether she will have her homestead, or take the bequests of the will. If the question was altogether an original one in this state, our inclination would be to follow the decision of the Vermont court; but there are several cases which, while they have not squarely considered the precise question presented in this case, do indicate a leaning of our Supreme Court to the right of the widow to homestead, notwithstanding it may appear antagonistic to the will. In *Jarman* v. *Jarman's Heirs,* 4 Lea, 672, the testator, by his will, gave to his wife a large real and personal estate. The widow did not formally dissent. The estate proved to be indebted greatly beyond its value. After the year within which the widow could dissent had elapsed, she claimed both dower and homestead in the real estate of the testator. The court (Justice Turney, delivering the opinion) said: 'By our law the homestead vests in the husband and wife jointly,

and is a life estate. Upon the death of either it vests in the survivor. Neither has the right to dispose of it, except with the consent of the other, by will or otherwise, and then only in the mode prescribed by statute. The right of the wife is fixed during coverture, and is only lost by her voluntary alienation, or by abandonment, or by death.' This case was cited with approval by the court in *Wilson* v. *Morris,* 94 Tenn., 547, 561, 29 S. W., 966. In this latter case the testator, after dividing his personal property between his widow and his daughter, his only child, as the laws of the State of Tennessee direct, devised his real estate as follows: 'My real estate, situated in Hamilton County, Tennessee, near the City of Chattanooga, is increasing in value, and I advise that it be retained by the family. My wife will be entitled to a portion of this tract of land as dower, during her life.' It will be observed that the language of the will does not, in terms, exclude homestead, and it seems to us that such a construction is not necessarily implied. The suggestion that the land be retained in the family might, on the other hand, be very well held to be a reservation of the rights in the property to the members of the family, whatever they might be. There was no attempt in the opinion of the court to interpret the language of the will so as to determine whether the testator intended to exclude or preserve homestead. Without discussing the question, it was simply held that the widow was entitled to homestead as well as dower, and the case of *Jarman* v. *Jarman* was cited in support. After a careful examination of the opinion of the court, we are constrained to believe that the precise question before us was not considered by the court; and we are of the further opinion that the conclusion reached was more

the result of the reasoning of the court on the other question in the case, than agreement with *Jarman* v. *Jarman*. As before stated, one of the clauses of the will divided the testator's personal property between his wife and daughter, his only child, as the laws of the State of Tennessee direct. The widow claimed that she was entitled to the articles exempt to the widow under the statute, and to a year's allowance. It was held that it was the intention of the testator to dispose of his property between his widow and daughter, precisely as it would have gone under the laws of the state if no will had been made, and she was accordingly allowed both exemptions and year's allowance. There being nothing in the will directly or impliedly depriving her of either, it was deemed to be entirely in harmony with the testator's intention to give her whatever the law, in the absence of the will, would have given her. So, there being no words of exclusion in the will as to homestead, and the disposition of the real estate being consistent with its preservation, it was held that the widow was entitled to it. Standing alone, the case of *Wilson* v. *Morris* would not sustain the right of the widow to homestead, in a case where it was apparent that the testator had intended to make provision in lieu of homestead. The only value of that case as an authority on this question is its approval of *Jarman* v. *Jarman*. The dictum of Judge TURNEY touching the nature or character of the widow's estate in the homestead was criticised in the case of *Creath* v. *Creath,* 86 Tenn., 659-661, 8 S. W., 847. In *Jarman* v. *Jarman,* it was said that a homestead vests in the husband and wife jointly, as a life estate, and, upon the death of either, vests in the survivor. In *Creath* v. *Creath,* Judge FOWLKES, delivering the opinion of the court, said that the wife had no such estate as that described; that she

had a mere right of occupancy, or the right to have the same exempt from her husband's debts, and a negative upon his power of alienation. In the course of the opinion it was said that the dictum of Judge TURNEY was merely *arguendo,* and not necessary to the decision of the question. So that it will be seen that in *Creath* v. *Creath* the judgment of the court upon the question was approved, although the language of the judge delivering the opinion was criticised. If, upon grounds of public policy, the widow's right of homestead is inalienable, except by her consent, in the manner prescribed by the statute, it would seem to be of no consequence whether the nature of her estate was such as it was held to be in *Jarman* v. *Jarman,* but was indicated in the case of *Creath* v. *Creath.* The policy of the law preserving to the widow homestead in the real property of her deceased husband would apply in the one case as much as in the other. And it is upon this ground that the rulings of this court in *Jarman* v. *Jarman* must stand. This view would be entirely consistent with the policy of our law and the decisions of our courts, which have been careful to guard and uphold the widow's right of homestead, as a necessary provision for her and her children. Upon what appears to be the leaning of the Supreme Court of this state, rather than what it has expressly decided, we are constrained to· hold that in this case the chancellor was correct in allowing Mrs. House homestead in the real estate of her deceased husband.'

"We have deemed it unnecessary to copy into this opinion the will involved in *Wooten* v. *House, supra,* for the reason that, as seen from the first paragraph of the foregoing quotation, the Court found that the widow's claim of homestead was *inconsistent with the provisions*

*of the will* of her husband, and, upon that predicate, undertook to determine whether the widow was entitled to homestead after having accepted the provisions of the will. *Wooten* v. *House* was affirmed orally by the Supreme Court March 7, 1896.

"The case of *McCrae* v. *McCrae* (January 10, 1900), 103 Tenn., 719, 54 S. W., 979, cited on the brief for appellee, did not involve the question of 'election.' It was there held that a widower with minor children cannot cut off the right of said children to homestead by a will devising all his land to be sold to pay his debts, although he could have accomplished that result by alienating his land in his lifetime.

"In *Mason* v. *Jackson* (Tenn. Chy. Appeals, February 5, 1900), 57 S. W., 217, 220, the widow conveyed her life estate in the land there in controversy (which was worth less than $1,000), by deed made within one year after her husband's death, and the Court found, from recitals in the deed and the surrounding facts, that in thus conveying the homestead the widow was asserting rights under the constitution and statutes, and not relying upon the will by which the testator devised to his widow said homestead tract 'during her widowhood' but gave her nothing more in the will.

"The case of *Walker* v. *Bobbitt* (1905), 114 Tenn., 700, 88 S. W., 327, did not involve the question of an election by the widow between homestead (or dower) and a provision for her in her husband's will. The land there involved was held by the husband and wife as tenants by the entirety, and the Court held that the doctrine of election could not be invoked in such case. The statement in that opinion, that the doctrine of election is not applied *save in a case of property in which the testator has*

*no interest,* should be confined to the case there in judgment and analogous cases. *L. & N. Railroad Co.* v. *Davidson County Court,* 1 Sneed, 637, 695, 62 American Decisions, 424; *Cohens* v. *Virginia,* 6 Wheat. (U. S.), 264, 399, 5 L. Ed., 257; Blacks Law of Judicial Precedents, sec. 11, page 49. Certainly the able and distinguished jurist who prepared the opinion in *Walker* v. *Bobbitt* was not speaking with reference to the multitude of cases wherein the courts have applied 'the doctrine of election' so as to require a widow to elect between the provision made for her by her husband's will and homestead or dower (or both) in the lands of her deceased husband, many of which cases are digested in 22 A. L. R., pp. 437-524.

"In *Rowlett* v. *Rowlett,* 116 Tenn., 458, 95 S. W., 82, it was held that the widow is entitled to her deceased husband's exempt personal property, although his will purports to dispose of all his property and the widow did not dissent from the will as provided by statute. This holding was bottomed upon the provisions of the personalty-exemption statute (sec. 4023, Shan. Code), which reads as follows:

" 'The property exempt by law from execution shall, on the death of the husband, be exempt from execution in the hands of, and be vested in, the widow, without regard to the size or solvency of the estate of the deceased, for herself and in trust for the benefit of the children of the deceased, or of the widow, or of both, and shall not go to the executor or administrator; and, in case there be no widow, and the estate be either solvent or insolvent, such property shall be exempt for the benefit of the minor children under fifteen.'

"It is seen that the statute just quoted provides that the exempt personalty shall not go to the executor or administrator, but upon the death of the husband becomes 'vested in the widow.' It is true the Court used the language quoted from that opinion in appellee's brief, as follows:

" 'We have no case in which it is decided that the property provided for widows under Shannon's Code, section 4023 (Code 1858, section 2288), can be disposed of in a will in such way as to cast upon the widow the necessity of dissenting in order to claim it, although there are dicta, in cases not calling for a decision of the question that indicate such a view. Where the question has directly arisen, the decision has been in accord with our present determination. The same course of decision has prevailed in respect of the homestead right. *Wilson* v. *Morris,* 94 Tenn., 560, 561, 29 S. W., 969, 970; *McCrae* v. *McCrae,* 103 Tenn., 719, 54 S. W., 979.'

"It is obvious, however, that the last sentence of the above question, viz: That 'the same course of decision has prevailed with respect to the homestead right,' was an *obiter dictum,* as no question relating to the homestead exemption was involved in the case.

"The inapplicability of the case of *Wilson* v. *Morris* (cited by the Court in the above quotation) to the question of election presented in the instant case is clearly pointed out in *Wooten* v. *House, supra;* and we have heretofore called attention to the fact that the case of *McCrae* v. *McCrae, supra,* did not involve the question of 'election,' but the sole question there decided was that a widower with minor children could not cut off the right of such children to homestead by a will devising all his land to be sold to pay his debts.

"The question of whether the widow was put to her election between the provision made for her in her husband's will, on the one hand, and her homestead right, on the other hand, was squarely presented and decided in the case of *Chamness* v. *Parrish* (1907), 118 Tenn., 739, 103 S. W., 822, in which the opinion of the Court was prepared by the Honorable JOHN H. HENDERSON, sitting as Special Judge. In that case, after reviewing a number of Tennessee cases—some relating to homestead and some relating to the exempt personalty—(including *Rowlett* v. *Rowlett, supra*), the Court said:

" 'The language of the constitution (article 11, sec. 11) is as explicit in throwing safeguards about the homestead, as is the statute with regard to exempt property: '.A homestead in the possession of each head of a family and the improvements thereon, to the value in all of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minority of the children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife when that relation exists.'

" 'The same principle, held in *Rowlett* v. *Rowlett, supra,* to apply to exempt property, should apply with equal or greater force to the homestead right. The latter is a right guaranteed by the constitution, and the construction by the court in its favor has been liberal. The husband cannot deprive the wife thereof by deed, unless it be with her express consent; and by statute (Shannon's Code, sec. 3798), this consent can be evidenced only 'by conveyance duly executed as required by law for a married woman.' He cannot deprive her of this right by will; and by provisions of his will in her favor she

will not be put to her election, unless it plainly appears therefrom that such was his intention. This intention will not be implied from a mere gift to her by the will.'

"The Annotator in 22 A. L. R., 513, *supra,* after digesting *Chamness* v. *Parrish, supra,* says, 'it appears, therefore, that the rule in Tennessee is now the same as that in other jurisdictions.'

"It will be observed that in the above quoted excerpt from the opinion in *Chamness* v. *Parrish,* the Court states three rules of law which, we think, control the decision of the instant case. They are as follows:

"(1) The husband cannot, by his will, deprive his widow of the homestead right; (2) the widow will not be put to her election by provisions of the husband's will in her favor, unless it plainly appears from the will that such was his intention; and (3) such intention will not be implied from a mere gift to the wife by the will.

"The second of the three propositions just stated concedes that there may be circumstances under which the widow will be put to her election with respect to the homestead, hence the first proposition must mean that if the widow elects to take homestead, she cannot be deprived of that right by her husband's will. But, under the second rule, if it plainly appears from the will that the testator intended that his widow should not have homestead assigned to her out of his estate, she must elect whether she will take homestead or the provision made for her in the will. And (by the third rule) in ascertaining the intention of the testator, the mere fact that the will contains a bequest or devise to the widow is not, of itself, sufficient to show that the testator intended that she should not have homestead out of his estate.

■ "This brings us to an examination of the will of Dr. J. E. Miller, with the view of ascertaining whether or not it was his intention that his widow should have homestead out of his estate. As we have seen, the testator owned three separate parcels of real estate, all in Rogersville, at the time he made his will and at the time of his death. He devised one of these parcels of realty to his nephew, defendant Portrum, by the 12th Item of his will, which Item reads as follows:

" 'I hereby devise and bequeath unto my nephew, Judge Hal E. Portrum, of Rogersville, Tennessee, the residence property in which I now live, located on Main Street in Rogersville, Tennessee, purchased by me from Mrs. Kitty Miller, together with my encyclopedias, dictionary and the picture of my father, now hanging in my parlor.'

"It seems clear that the testator intended that Judge Portrum should have the complete title to the property described in Item XII, *supra,* with the full possession and usufruct thereof, without incumbrance or diminution, and this would be inconsistent with, and would exclude, an intention of the testator that said property (which is worth much more than $1,000) should be sold and his widow have the value of a homested set apart for her out of the proceeds.

"The remaining two parcels of the testator's real estate fall within the provisions of the 14th Item of his will, which Item reads as follows:

" 'I direct that all the rest, residue and remainder of my estate, of every kind and character, including real, personal and mixed, be sold by my executor and the proceeds distributed as follows:

" 'To my wife, Annie Keith Miller, the sum of $10,000.

" 'To my grandnephew, my namesake, and son of Will Ripley the sum of $500.

" 'To my nephew, Sam Miller, of Knoxville, Tennessee, the sum of $500.

" 'To my sister, Mrs. Laura Webster, the sum of $5,000.

" 'And the balance, if any, to be equally between my sister, Mrs. Laura Webster, and my wife, Annie Keith Miller.'

"It is evident that if homestead be assigned to complainant out of either of the remaining two parcels of the testator's real estate, the bequests in the 14th Item of the will of the testator, or some of them, will be defeated to the extent of the value of the homestead. This, we think, clearly discloses the intention of the testator that the widow should not have homestead, and she was therefore put to her election between the homestead on the one hand and the provisions made for her in the will of her deceased husband on the other hand.

"This conclusion is supported by the great weight of authority in other jurisdictions, and is in harmony with the rules stated in *Chamness* v. *Parrish, supra,* which, so far as we are aware, is the last utterance of our Supreme Court concerning the doctrine there involved.

"It results that the appellant's first assignment of error is sustained, and the decree of the Chancery Court is reversed and the complainant's bill dismissed.

"The costs of the cause, including the cost of the appeal, will be adjudged against the complainant Mrs. Anna Keith Miller."